IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-00478-BNB-PAC

EDWARD J. KERBER,
NELSON B. PHELPS,
JOANNE WEST,
NANCY A. MEISTER,
THOMAS J. INGEMANN, JR.,
Individually, and as Representative of plan participants and plan beneficiaries of the QWEST
PENSION PLAN,

Plaintiffs,

v.

QWEST PENSION PLAN,
QWEST EMPLOYEES BENEFIT COMMITTEE,
QWEST PENSION PLAN DESIGN COMMITTEE, and
QWEST COMMUNICATIONS INTERNATIONAL, INC.,

Defendants.
_____

**ORDER**
_____

This matter is before me on **Defendants' Motion to Dismiss the Second and Third Claims for Relief Set Forth in the Second Amended Complaint Asserted by Named Plaintiffs Edward Kerber and Nelson Phelps.** [Doc. #34, filed 12/22/05] (the "Motion"). The Motion is GRANTED IN PART and DENIED IN PART.

**I.  BACKGROUND**

The plaintiffs were granted leave to file their Second Amended Complaint for Proposed Class Action Relief Under ERISA (the "Complaint") on November 17, 2005. The Complaint was filed on November 18, 2005. The Complaint alleges the following:

1. Plaintiffs Kerber and Phelps retired from U S West, Inc. ("U S West") in 1990. *Complaint*, ¶¶ 5, 7.

2. In July 2000, U S West merged with Qwest Communications International, Inc. ("Qwest"), the surviving corporation. Id. at ¶ 16.

3. Plaintiffs Kerber and Phelps are both receiving service pension annuities from the Qwest Pension Plan (the "Plan"). Id. at ¶¶ 5-8. The Plan is the successor in interest to the AT&T Pension Plan; the AT&T Management Pension Plan; the U S West Pension Plan; the U S West Management Pension Plan; and the U S West Pension Plan (as restated). Id. at ¶ 18.

4. For many decades, AT&T and successor companies Mountain Bell, Northwestern Bell, Pacific Northwest, U S West, and Qwest, provided a Pension Death Benefit (the "Death Benefit") payable out of the assets of the Plan to the surviving spouse or dependant beneficiaries of a retired Plan participant who died while receiving either a service or disability pension annuity from the Plan  Id. at ¶¶ 1, 48.

5. From 1984 to July 2000, U S West issued Plan publications and Summary Plan Descriptions ("SPDs") designed to impress upon Plan participants that the Death Benefit was a "funded, vested, protected accrued defined pension benefit." Id. at ¶¶ 72-95. From January 1, 1984, until at least December 29, 1994, the Plan contained a "Change in Plan" provision which precluded amendment without consent of Plan participants. Id. at ¶¶ 96-97.

6. On December 29, 1994; January 25, 1998; and June 12, 1998, U S West executed Plan documents that changed the Plan's reservation of rights language and no longer classified the Death Benefit as "accrued," an "entitlement," or a "defined pension benefit." These changes were not disclosed to the plaintiffs. Id. at ¶¶ 113-26.

7. In July 2000, Qwest took over as Plan sponsor. Id. at ¶ 131.

8. On December 19, 2002, Qwest executed a restated Plan document which stated that the Death Benefit was not an accrued benefit. Id. at ¶¶ 134-35. In September 2003, Qwest announced that it was considering eliminating the death benefit as of October 1, 2003, for all retirees regardless of their retirement date. Id. at ¶¶ 32, 137.

9. Phelps and Kerber submitted written demands for a declaration of their rights to the Death Benefit. Id. at ¶¶ 33, 40. The demands were treated as internal claims under the claims procedure provisions of the Plan. Id. at ¶ 33.

10. The defendants denied the plaintiffs' demands as outside the scope of authority and as premature. The defendants' decision was final and constituted an exhaustion of the plaintiffs' administrative remedies. The plaintiffs were informed that they had a right to bring a civil action under ERISA § 502(a). Id. at ¶¶ 36, 41.

11. The defendants delayed the elimination of the Death Benefit "but have continuously maintained the threat to take such action." Id. at ¶ 35.

12. On December 5, 2003, Plan Amendment 2003-5 was executed which purported to eliminate the Death Benefit for persons retiring on or after January 1, 2004. Id. at ¶ 37.

13. The defendants contend that the Death Benefit is "at-risk" and can be taken away pursuant to the presently worded reservation of rights language in the plan. Id. at ¶ 146.

The Complaint asserts four claims for relief on behalf of "all PLAN participants (and beneficiaries thereof) who retired and are receiving either a service pension annuity or disability pension annuity, and all those persons (and beneficiaries thereof) who retired on or after

January 1, 2004 and received a lump sum distribution of their service pension annuity, minus the lump sum present value of the Pension Death Benefit." Id. at ¶ 199.

Claim One asserts "Breach of Fiduciary Duty and Equitable Estoppel Due to Failure to Disclose Material Information." Id. at ¶¶ 149-65. Claim Two alleges "Violations Due to Illegal Elimination of Pension Death Benefit." Id. at ¶¶ 166-188. Claim Three is a "Claim to Clarify Future Rights to the Pension Death Benefit" under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Id. at ¶¶ 189-92. Claim Four is brought pursuant to ERISA, 29 U.S.C. § 1022 to "Correct Faulty PLAN Documents, Including SPD." Id. at ¶¶ 193-98.

Kerber and Phelps purport to represent a putative class of all Plan participants and beneficiaries who retired prior to January 1, 2004, and are receiving service or disability pension annuities ("pre-2004 retirees"). Id. at ¶ 199.

The defendants seek dismissal of Claims Two and Three as asserted by plaintiffs Kerber and Phelps for lack of subject matter jurisdiction. The defendants argue that Kerber and Phelps do not have standing to assert Claims Two and Three because the Complaint does not allege that they have suffered an "injury in fact." The defendants further argue that Claims Two and Three, as asserted by Kerber and Phelps, are not ripe for judicial review.

## II. STANDARD OF REVIEW

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions

4

> the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case.  The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

The defendants are asserting a facial attack on the Complaint's allegations as to subject matter jurisdiction.  Therefore, I accept the allegations of the Complaint as true.

### III.  ANALYSIS

The doctrine of standing "is an essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

> [T]he irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative,

> that the injury will be redressed by a favorable decision.
>
> FN1. By particularized, we mean that the injury must affect the plaintiff in a personal and individual way.
>
> The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.

Id. at 560-61 (internal quotations and citations omitted).

The Tenth Circuit Court of Appeals describes the doctrine of ripeness as follows:

> In order for a claim to be justiciable under Article III , it must be shown to be a ripe controversy. Ripeness is peculiarly a question of timing, intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements. In short, the doctrine of ripeness is intended to forestall judicial determinations of disputes until the controversy is presented in clean-cut and concrete form.
>
> As a general rule, determinations of ripeness are guided by a two-factor test requiring us to evaluate both the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration. In determining whether an issue is fit for judicial review, the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all. To this end, courts frequently focus on whether a challenged [administrative] action is final and whether determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed. In assessing the hardship to the parties of withholding judicial resolution, our inquiry typically turns upon whether the challenged action creates a direct and immediate dilemma for the parties.

New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995) (internal quotations and citations omitted).  See also Roe No. 2, v. Ogden, 253 F.3d 1225, 1231 (10th Cir. 2001) (stating that "[t]he ripeness inquiry is threefold: (1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented") (internal quotations and citations omitted).

### A.  Claim Two

Claim Two alleges that the defendants violated the Internal Revenue Code ("IRC"), 26 U.S.C. § 420, and ERISA, 29 U.S.C. §§ 1054(g), 1104(a), and 1103(c)(1) and (2) when "the PLAN sponsor adopted PLAN Amendment 2003-5 . . . to eliminate the Pension Death Benefit for any PLAN participant who retired on or after January 1, 2004." *Complaint*, ¶ 177.  Claim Two requests an order striking Amendment 2003-5 and requiring the Plan to "make payment of the correct amount of the Pension Death Benefit . . . to each Plan participant and qualified mandatory beneficiary to whom the Pension Death Benefit became payable after January 1, 2004." Id. at ¶¶ 184-85.

Claim Two asserts violations caused by, and seeks remedies for, the adoption of Amendment 2003-5 which eliminated of the Death Benefit for Plan participants who retired on or after January 1, 2004.  Kerber and Phelps each retired in 1990, and the Complaint does not allege that they have suffered any concrete, particularized, and actual injury from the implementation of Amendment 2003-5.[1]  Therefore, Kerber and Phelps do not have standing to bring this claim.

---

[1] The plaintiffs filed a response to the defendants' Motion to Dismiss. *Plaintiffs' Response in Opposition to [Docket No. 34] Defendants' December 22, 2005 Motion to Dismiss* [Doc. #48, filed 1/19/06] (the "Response").  The Response presents an extensive statement of the case and a

The Motion is GRANTED to the extent it seeks dismissal of Claim Two as asserted by plaintiffs Kerber and Phelps.

### B. Claim Three

Claim Three is brought pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B) to clarify the rights of the plaintiffs to future Death Benefits under the terms of the Plan.[2] Claim Three seeks (1) "a declaration that those persons receiving a monthly pension annuity and their mandatory beneficiaries, to the extent there are any at time of death, are entitled to Pension Death Benefits payable from the PLAN," and (2) "a declaration that all persons who retired on or after January 1, 2004 and received a lump sum distribution are entitled to an additional lump sum payment representing the unpaid Pension Death Benefit, plus interest." *Complaint*, ¶¶ 191-92.

The plaintiffs argue that because they relied on SPDs and publications that characterized the Death Benefit as a protected benefit, they "made important and irrevocable financial planning decisions, foregoing the purchase of life insurance as an alternative to the Pension Death Benefit." *Response*, p. 14. See also *Complaint*, ¶¶ 99, 100, 129, 155. Thus, their injury is their "inability to change their prior pension elections which choices heavily factored in the Pension Death Benefit as an 'entitlement' according to previously issued SPDs." *Response*, p. 14.

The defendants assert that, because the Complaint acknowledges that the Plan continues to provide a Death Benefit for plaintiffs Kerber and Phelps, they have not suffered an injury in fact

---

convoluted argument on standing. Like the Complaint, however, the Response does not contain any factual allegations that Kerber and Phelps suffered an injury in fact as a result of the adoption of Amendment 2003-5.

[2]A civil action under may be brought under 29 U.S.C. § 1132(a)(1)(B) by a participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

and, therefore, do not have standing to assert this claim.  *Motion*, p. 7.  The defendants further assert that the plaintiffs

> have alleged no facts from which one could conclude an injury is "certainly impending".  Qwest proposed eliminating the Death Benefit more than two years ago and withdrew the proposal only several days after presenting it to the retirees.  The Pre-2004 Retirees do not allege Qwest has taken steps to terminate the benefit or that Qwest has a present intent to do so.  They simply state Qwest has refused to commit that it will not and cannot terminate the benefit at some indeterminate time in the future.

Id.

Contrary to the defendants' assertions, the Complaint's allegations of an injury in fact are sufficient to support a claim for clarification of the plaintiffs' future rights to the Death Benefit.  The Complaint alleges that the defendants changed the description of the Death Benefit from a protected benefit to an unprotected benefit and that the defendants continue to refuse to acknowledge that the Death Benefit is a protected benefit.  The Complaint further alleges that, as a result of the defendants' actions, the plaintiffs have lost the assurance that their beneficiaries will receive the Death Benefit, and it is too late to change their financial portfolios to compensate for a future loss of the Death Benefit.  Thus, Claim Three is not based on a vague threat to eliminate a pension benefit; Claim Three is based on the defendants' recharacterization of the

9

pension benefit from an accrued, protected benefit to a benefit that may be eliminated at any time.

In support of their position, the defendants cite <u>Devlin v. Transportation Communications Int'l Union</u>, 175 F.3d 121, 131 (2d Cir. 1999). *Motion*, pp. 7-8. In <u>Devlin</u>, retired union members brought suit challenging the union's attempt to rescind a Cost of Living Adjustment ("COLA") to their retirement plan. 175 F.3d at 123. The district court found that the plaintiffs did not meet the injury in fact requirement for standing. <u>Id.</u> at 130. The court noted that the issue was being litigated in another district, and that if the defendants in that suit succeeded in rescinding the COLA amendment, then the plaintiffs might be able to satisfy standing requirements. <u>Id.</u> The court stated, "[a]t this time, however, there is no indication about the outcome of the [other] litigation, and it is therefore premature for the Court to consider this claim on the merits." <u>Id.</u> The Second Circuit Court of Appeals affirmed the district court's dismissal of the case. <u>Id.</u> at 131.

The defendants state that "[u]nlike the present case, where Qwest has merely reserved the right to discontinue the Death Benefit, the plan trustees in <u>Devlin</u> had actually filed suit in Maryland seeking approval to repeal the COLA amendment." <u>Id.</u>

The <u>Devlin</u> case is inapposite. There is no indication in the record that the Death Benefit at issue here is being litigated in another forum. Moreover, the plaintiffs' claim for clarification of their rights is not based on the fact that Qwest has "merely reserved the right to discontinue the Death Benefit." The plaintiffs base their claim on the fact that the defendants wrongfully changed the description of the Death Benefit from a protected or accrued defined benefit to a welfare benefit subject to a general reservation of rights clause. Finally, the plaintiffs in <u>Devlin</u> were not seeking to clarify their future rights under ERISA 29 U.S.C. § 1132(a)(1)(B); they were asserting

10

an age-based discrimination claim under the Age Discrimination in Employment Act. Id. at 126.

The defendants also cite International Union v. Facet Enterprises, Inc., 601 F. Supp. 292, 295-97 (E.D. Mich. 1984). *Motion*, p. 8. The defendants describe Facet as a case "dismissing ERISA claims seeking a declaration that retirement benefits were vested because defendant's 'threat' to reduce the benefits was too 'abstract and speculative' to establish standing." Id. Although the defendants' characterization of the case is not incorrect, the Facet court based its holding on the fact that the employer would not reduce benefits without the union's consent, "and since there is no possibility of obtaining such consent, plaintiffs' 'injury' or potential 'injury' is too abstract and speculative to satisfy standing requirements." Id. at 297. Here, the Complaint alleges that the defendants have taken an affirmative step to recharacterize the Death Benefit from a protected benefit to a non-protected benefit.

Finally, the defendants cite LPA, Inc. v. Chao, 211 F. Supp.2d 160, 164-65 (D. D.C. 2002), to support their argument that the plaintiffs' alleged injury is too speculative. *Motion*, p. 8. The defendants describe Chao as a case where "the asserted injury--the passage by one or more states of laws authorized by a challenged federal administrative rule--was not imminent because no state had enacted such a law in the 22 months since plaintiffs' expert opined that at least one state was likely to do so within one year." Id.

The Chao court found that the alleged injury was too speculative based on the following:

> It is undisputed that no state has enacted BAA-UC legislation and
> that the adverse effects plaintiffs contend that BAA-UC legislation

> might cause-increased taxes, increased absenteeism and decreased productivity-therefore have not occurred.
>
> * * *
>
> Moreover, the harms that may be caused by BAA-UC legislation--if and when such legislation is passed--will depend largely on the specific provisions included in the statute passed by the particular state. Because the BAA-UC allows each state considerable latitude to determine how to enact such programs and what to include, the substance of these statutes could differ significantly. The Court therefore would have to speculate that whenever some state enacts BAA-UC legislation, the statute it passes will contain the types of provisions that will create the kind of harms plaintiffs seek to avoid. Because plaintiffs ask the Court to engage in a series of inferences about the harms they fear will occur, the Court must conclude that the injury alleged simply is too speculative to satisfy the Article III standing requirements.

211 F. Supp.2d at 165.

Unlike the plaintiffs in Chao, the plaintiffs in this case allege a specific harm caused by the defendants' actions: they allege that they have made irrevokable retirement decisions based on the prior definition of the Death Benefit as a protected one and they are unable to adjust their retirement plans to address the benefit as one that can be eliminated at any time.[3]

In addition, the plaintiffs have sufficiently alleged that the case is ripe for judicial resolution. The Complaint alleges that the defendants have changed the description of the Death Benefit from a protected benefit to a benefit that can be eliminated and that Qwest continues to maintain that the Death Benefit is "at-risk" and can be eliminated at any time. Thus, the Complaint sufficiently alleges that the defendants' action in recharacterizing the benefit is final. A determination of whether the defendants have wrongfully recharacterized the Death Benefit may be made without further factual development, and there is no indication in the record that such a

---

[3] Moreover, the Chao plaintiffs were not suing to clarify their rights to future benefits under 29 U.S.C. § 1132(a)(1)(B).

determination would inappropriately interfere with further administrative action. Delayed review of the issue would serve only to increase the uncertainty of the plaintiffs' retirement benefits, and decrease their ability to compensate for the uncertainty.

The Motion is DENIED to the extent it seeks dismissal of Claim Three as asserted by plaintiffs Kerber and Phelps.

### IV.  CONCLUSION

IT IS ORDERED that the Motion be GRANTED IN PART and DENIED IN PART as follows:

1)   GRANTED to the extent it seeks dismissal of Claim Two as asserted by plaintiffs Kerber and Phelps for lack of subject matter jurisdiction; and

2)   DENIED insofar as it seeks dismissal of Claim Three as asserted by plaintiffs Kerber and Phelps for lack of subject matter jurisdiction.

Dated October 5, 2006.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge